**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIE NEGRON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 24-cv-3939** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On August 18, 2021, plaintiff Willie Negron ("plaintiff" or "Negron") was riding a motorized skateboard on the Northwest side of Chicago, Illinois, and sustained injuries after colliding with a United States Postal Service ("USPS") truck operated by USPS employee, Derrick Middleton ("Middleton"). Negron initiated this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.* ("FTCA"), alleging negligence by Middleton in the scope of his employment with the USPS.

The Court held a one-day bench trial as to liability only on May 5, 2026, at which the parties presented testimony from Negron, Middleton, and Middleton's manager, Shinese Haymer-Harris. For the reasons that follow, the Court finds that plaintiff has failed to establish by a preponderance of the evidence that Middleton breached his duty of care and he has therefore failed to prove his claim of negligence. Accordingly, the Court enters judgment in favor of defendant, and against plaintiff.

## I. STANDARD OF DECISION

Where, as here, an action is "tried on the facts without a jury," Federal Rule of Civil Procedure 52 requires the Court to "find the facts specially and state its conclusions of law separately." Fed.R.Civ.P. 52(a); *see also Khan v. Fatima*, 680 F.3d 781, 785 (7th Cir. 2012) ("[T]he trier of fact must decide whom to believe (and how much to believe) on the basis of the coherence and plausibility of the contestants' testimony, corroboration or contradiction by other witnesses, and other clues [as] to falsity and veracity."). In doing so, "[t]he Court must explain the grounds" of its decision and otherwise demonstrate a "'reasoned, articulate adjudication.'" *Torres v. Tovar*, No. 22-CV-3806, 2023 WL 5431352, at *1 (N.D.Ill. Aug. 23, 2023), *quoting Aprin v. U.S.*, 521 F.3d 769, 776 (7th Cir. 2008).

In assessing witness credibility, the Court observed and considered, among other things, "each witness' demeanor and facial expressions; intelligence; ability and opportunity to see, hear, or know the matters about which the witness testified; memory; potential for bias; and the believability of the witness' testimony considering the other evidence presented." *Torres*, 2023 WL 5431352 at *1. Moreover, the Court notes that it "doesn't subscribe to the view of 'false in one, false in all.'" *Jetel v. Jetel*, No. 3:25-CV-50329, 2025 WL 3043527, at *1 (N.D.Ill. Oct. 31, 2025), *quoting DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 870 (N.D.Ill. 2021) ("[T]his Court does not subscribe to that principle and neither does the Seventh Circuit."). As such, the Court may find a witness to be credible as a whole even if portions of that witness's testimony are not.

The following represents the Court's findings of fact and conclusions of law pursuant to Rule 52. "To the extent that any findings of fact herein may be considered conclusions of law, they shall be deemed conclusions of law, and *vice versa*." *Ojimba v. United States*, 824

F.Supp.3d 732, 735 (N.D.Ill. 2026) (citing *In Re Lemmons*, 742 F.2d 1064, 1070 (7th Cir. 1984) ("The labels of fact and law assigned by the trial court are not controlling.")).

## II. FINDINGS OF FACT

Middleton is a full-time mail carrier for the USPS, a position he has held since 2005. (Trial Tr. (Dckt. #51) at 80). In that role, Middleton drives a 2-ton truck, also known as a box truck, which is bigger than a standard SUV. (*Id*. at 81, 104; Defendant's Exhibit ("DX") No. 9). As of August 2021, and for fifteen years prior, Middleton was assigned to Route 13 on the Northwest side of Chicago. (Trial Tr. at 83). Middleton's manager (since 2010), Shenise Haymer-Harris, described Middleton as an "outstanding employee," who drives "safely" and follows the "rules and regulations." (*Id*. at 36–37).

The accident in question occurred on August 18, 2021, at the intersection of Lincoln Avenue and Kedzie Avenue, depicted in DX No. 1 as follows:[1]




[1] The Court has added the arrow marking the exact intersection.

As depicted, southbound Kedzie Avenue dead ends into Lincoln Avenue. Kedzie has two lanes going south: one to turn right (or northwest) onto Lincoln Avenue and one to turn left (or southeast) onto Lincoln Avenue. (Trial Tr. at 86; *see also* DX Nos. 2, 3 & 5). There is a marked pedestrian crosswalk spanning Kedzie Avenue, and an accessible sidewalk ramp (with a textured plate) leading directly into that crosswalk from Lincoln. (Trial Tr. at 68; DX Nos. 3 & 5).

For a vehicle to turn right onto Lincoln from Kedzie requires an approximately 120° turn, as opposed to a typical 90° turn. (Trial Tr. at 32–33, 63 & 106). Middleton testified that in executing this turn over his fifteen years on the route, he "never" ran over the curb with his front wheels or back wheels. (*Id*. at 88).

On the afternoon of August 18, 2021, Negron was riding on a motorized skateboard, which he operated with a hand-held remote worn around his wrist. (Trial Tr. at 48–49, 67). The skateboard was capable of traveling up to approximately 20 miles per hour. (*Id*. at 65). Just prior to the collision, Negron was traveling southeast on the sidewalk adjacent to Lincoln Avenue, which slopes downward as it approaches Kedzie. (*Id*. at 68, 96). While riding, Negron had two feet on the board facing Lincoln Avenue, though he testified that he was looking down the street towards Kedzie Avenue. (*Id*. at 66–67, 95).

At the same time, Middleton was driving the 2-ton USPS truck on his typical route, traveling southbound on Kedzie Avenue in the right-hand lane. (Trial Tr. at 87–89). Upon approaching the intersection of Lincoln and Kedzie, the light was red, and Middleton stopped the truck just before the crosswalk spanning Kedzie. (*Id*. at 89). Specifically, Middleton testified that he stopped "right over the . . . the only sign . . . that is on the pavement," as depicted in DX No. 3 as follows:[2]

[2] The Court added the handwritten asterisk to DX No. 3 during Middleton's testimony to reflect where he testified he stopped his vehicle.




Although Middleton testified that he *could* turn right on red at this intersection, he said that he never did because "Lincoln is a busy street and the traffic is always flowing kind of fast through there." (Trial Tr. at 89–90). Accordingly, Middleton remained stopped for the entirety of the red light. (*Id*. at 90).

When the light turned green, Middleton began to slowly (less than three miles per hour) make the 120° right turn onto Lincoln Avenue. (*Id*. at 90, 96). As he did so, Middleton observed Negron riding his skateboard "fast" on the sidewalk down Lincoln. (*Id*. at 91). Middleton made eye contact with Negron and stopped the truck because "he didn't know if [Negron] was going to run past the front of the truck." (*Id*. at 92). After Middleton stopped, Negron tried to make a

lefthand turn onto Kedzie along the side of the truck. (*Id*. ("He proceeded -- he kept coming. And, then he tried to lean, to go down the side of the truck.")). Unfortunately, Negron was unable to make the turn and ran into the right-hand side of the truck near the back wheels. (*Id*. at 92–93).

After Negron hit the truck, Middleton got out of the vehicle and saw him lying face down on the ground, moaning. (*Id*. at 97). Middleton immediately called 911, as required under USPS procedures. (*Id*. at 14–15, 97–98). The police and an ambulance arrived quickly. (*Id*. at 98). Upon questioning by the police, Middleton testified that he told them that the "skateboarder hit the side of [his] truck." (*Id*. at 99). Middleton did not receive a ticket from the police at the scene of the accident or anytime thereafter. (*Id*. at 100). Ultimately, the ambulance transported Negron from the scene to a local hospital for treatment. (*Id*. at 45).

Immediately after calling 911, Middleton called his manager to report the accident, also as required under USPS procedures. (*Id*. at 14, 98). Haymer-Harris arrived at the scene shortly thereafter to investigate the accident for USPS. (*Id*. at 15, 17). In doing so, she spoke with the police and Middleton, who told her that the skateboarder was traveling down Lincoln and collided with the postal truck. (*Id*. at 17, 18–19).

As part of her investigation, Haymer-Harris completed a "PS Form 1769/301 Accident Report" based on the information gathered at the scene. (Pl.'s Ex. ("PX") E). In it, Haymer-Harris indicated that "As the skateboarder was trying to make a left turn onto Kedzie, he collided into the moving postal vehicle." (*Id*. at 1). Haymer-Harris also selected "didn't see" and "failure to check clearance" as unsafe personal factors and practices attributable to Negron's involvement in the accident.[3] (*Id*.). Haymer-Harris also prepared a hand-drawn diagram to accompany PS

[3] Although the same unsafe factors and practices are listed in the section of the form related to Middleton's involvement in the accident, (*see* PX E at 2), Haymer-Harris explained that those

Form 1769, which also depicts the skateboarder making a sharp left turn and colliding with Middleton's truck in the middle of his 120° right-hand turn. (PX D).

Haymer also asked Middleton to write a statement on the date of the accident. (Trial Tr. at 19). Middleton's handwritten statement provides as follows:

> I, Derrick Middleton was heading back to the station around 2:30 p.m. I was making a right turn from Kedzie on to Lincoln Ave. As I was making and completing the turn a skateboarder was skating east bound on Lincoln Ave trying to turn of Kedzie and ran into the side of the mail vehicle. I immediately stop and got out to check on him, once I heard him say ouch, I called 911. I called my manager and waited until the fire department arrived.

(PX C).

Based on her investigation, Haymer-Harris concluded that the skateboarder caused the accident. (Trial Tr. at 43). The USPS did not take any disciplinary action against Middleton for his involvement in the accident, nor did Haymer-Harris require Middleton to participate in any additional training following the accident. (*Id.*).

Negron, for his part, offered testimony setting forth a different version of events leading up to the collision. In particular, Negron testified that as he approached the intersection on his skateboard, he saw a red light, and came to a complete stop on the sidewalk just before the "bumpy" plate, where he stood with one foot on the board and one foot on the sidewalk. (Trial Tr. at 49–50, 52–53 ("So, like standing between that, the bumpy square that I explained, and the yellow right there"). The exact location where Negron testified he had stopped can be observed in DX No. 5, as marked by the Court during Negron's testimony at trial with two red asterisks:

---

descriptions continue to relate to Negron only because she was unable leave the sections blank in Middleton's section or to select "none." (Trial Tr. at 23, 41–42.)




While completely stopped and standing on the corner, Negron did not see the 2-ton USPS truck at the intersection. (Trial Tr. at 70). Nonetheless, according to Negron, the USPS truck then drove up onto the sidewalk, drove over the front of his skateboard with its *back* wheels, and "propelled" him into the truck. (*Id*. at 53). Negron testified that he immediately lost consciousness and that he regained consciousness sometime later after he woke up in the hospital. (*Id*. at 54).

The Court is sympathetic to Negron's injuries. However, it notes that the head trauma that Negron experienced when he was knocked unconscious as the collision took place likely undermined his credibility by impacting his ability to fully recall the events leading up to the collision. *See, e.g.*, *Smith v. United States*, 752 F.Supp.3d 242, 250 (D.Mass. 2024) (recognizing in an FTCA case that the plaintiff who "was knocked unconscious in the accident . . . likely suffered head trauma which could have affected his memory."); *Spencer v. Illinois Workers' Comp. Comm'n*, 2024 WL 4868600, at *8, 2024 IL App (2d) 230576WC-U, ¶30, *as modified on denial of reh'g* (Nov. 21, 2024) (citing to physician's testimony to the effect that "[u]sually, when

people have a head injury, their memory for events surrounding that event is sketchy and not reliable"). To this point, Negron testified that he never saw Middleton's box truck before the collision despite the fact that he was—per his testimony—looking towards Kedzie as he approached the intersection. (Trial Tr. at 66-67). If Negron had been looking towards Kedzie as he approached the intersection, he definitely would have seen the box truck, yet he did not remember seeing it.

Furthermore, to credit Negron's version of events would require the Court to find that Middleton—a veteran mail carrier with a fifteen-year reputation for driving "safely" on this route and who testified he "*never*" ran over the curb at this intersection—drove over the curb at such a sharp angle that his back wheels ran over Negron's skateboard beyond the textured plate on the sidewalk ramp. Based on the evidence before the Court, this would be highly implausible.[4] Indeed, given where Middleton's box truck was stopped at the redlight and the nature of the intersection at Kedzie and Lincoln, it would have been extremely difficult for him to have driven his truck up over the curb to the location on the sidewalk as Negron testified even if he had tried to do so.

Finally, Negron's attempt to bolster his own testimony (and undermine Middleton and Haymer-Harris' testimony) with reference to their contemporaneous statements on the day of the accident is not persuasive. For example, for the proposition that it was *Middleton* that was moving at the time of the collision, Negron relies heavily on Haymer-Harris' statement in PS Form 1769, indicating that: "As the skateboarder was trying to make a left turn onto Kedzie, he collided into the moving postal vehicle." Similarly, Negron places great weight on Middleton's

[4] The Court acknowledges that plaintiff presented photos of his skateboard taken within a week of the accident, which show damage, particularly to the front of the board. (PX B1–B9). But such damage could certainly have been caused by running into the back of the truck at a high speed.

handwritten statement indicating that: as he "was making and completing the turn a skateboarder was skating east bound on Lincoln Ave trying to turn of Kedzie and ran into the side of the mail vehicle." Unlike Negron, however, the Court does not find these brief statements (made with no detailed elaboration) inherently inconsistent with Middleton's trial testimony regarding the accident.

First, if anything, these statements in fact corroborate Middleton's testimony that it was *Negron* who ran into the truck. Second, Middleton does not deny that he started to make the right turn—and was thus moving—before he saw Negron and stopped his vehicle. Indeed, after stopping at the red light, Middleton had no other option but to begin the right-hand turn onto Lincoln when he began moving the box truck forward after the light turned green. Finally, any minor discrepancies that Negron identifies in these statements do not outweigh the clear, credible testimony that Middleton offered at trial, the physical nature of the intersection itself that supports Middleton's testimony, the fact that the police did not issue a ticket to Middleton, and the fact that the USPS did not impose any disciplinary action on him.

## III. CONCLUSIONS OF LAW

The FTCA is a limited waiver of the government's sovereign immunity that "permits suits against the United States for personal injuries caused by the wrongful acts of federal employees acting within the scope of their employment under circumstances in which a private person would be liable to the plaintiff." *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (citing 28 U.S.C. §1346(b)(1)). In a case brought under the FTCA, the Court applies the law of the state in which the purported wrongful acts occurred. 28 U.S.C. §1346(b)(1); *see also Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991) ("[T]he FTCA

incorporates the substantive law of the state where the tortious act or omission occurred . . ."). Here, the accident occurred in Illinois law, so Illinois law applies.

To prevail on a claim of negligence under Illinois law, the plaintiff must present evidence establishing that: (1) defendant owed a duty of reasonable care to plaintiff; (2) defendant breached that duty; (3) the breach proximately caused plaintiff's injury; and (4) damages. *Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. 1980). "The burden falls on the plaintiff to establish each of the necessary elements by a preponderance of the evidence." *Furry v. United States*, No. 08 CV 6138, 2012 WL 850745, at *3 (N.D.Ill. Mar. 13, 2012), *aff'd*, 712 F.3d 988 (7th Cir. 2013) (citing *Nolan v. Weil-McLain*, 910 N.E.2d 549, 562 (Ill. 2009)).

Here, the parties do not dispute that Middleton had "a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as [would] enable him to avoid collision with other vehicles or pedestrians." *Furry*, 712 F.3d at 992; *see also Knights v. United States*, 203 F.Supp.3d 916, 928 (N.D.Ill. 2016) ("[U]nder Illinois law, drivers have a duty to maintain a proper lookout for pedestrians and a duty to use ordinary care when operating a motor vehicle so as to avoid injuring a pedestrian."); *Alexander v. Yellow Cab Co.*, 609 N.E.2d 921, 924 (Ill.App.Ct. 1993) ("Anyone driving a motor vehicle anywhere has a duty to maintain a proper lookout for pedestrians, other vehicles or any other obstacle in the vehicle's path.").[5] The parties do dispute, however, whether Middleton breached his duty of care.

---

[5] In Illinois, a pedestrian is defined as "Any person afoot or wearing in-line speed skates or *riding a skateboard*." 625 ILCS §5.1-158 (emphasis added). Admittedly, the statute does not speak to motorized skateboards like the one Negron was riding here. Although the Illinois Senate recently passed a bill that would make a motorized skateboard an "electric mobility device," that bill has not yet been signed into law by the Governor. The Court thus proceeds under the assumption (as initially pled by plaintiff himself) that he was a pedestrian.

Based on the findings of fact outlined above, the Court finds that plaintiff has failed to establish by a preponderance of the evidence that Middleton breached his duty of care. Again, the credible evidence before the Court establishes that Middleton exercised reasonable care when he began to slowly turn right on to Lincoln Avenue and, upon seeing Negron traveling quickly down the sidewalk at a fast speed, immediately stopped his vehicle to avoid hitting him. And, as explained above, Negron's version of the accident—that Middleton turned so sharply that his back wheels ran over Negron's skateboard while he was stopped behind the textured plate on the sidewalk—is inconsistent with the physical nature of the intersection and is otherwise implausible. As such, Negron has failed to establish that it was more likely than not that Middleton breached his duty of care and he therefore failed to prove his negligence claim.

## CONCLUSION

For the reasons stated above, the Court finds for defendant United States of America and against plaintiff Willie Negron.

**Date: August 19, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**